Tucker, P.
An information for an intrusion is a method of redress for a trespass committed on the lands of the commonwealth: it is of the nature of an action of trespass quare clausum, fregit; and, accordingly, it never could be maintained by the crown, until the king had acquired the possession. The manner of acquiring such possession, is always by matter of record; for it is a well established maxim of the english law, that the king can neither take nor part from any thing, but by matter of record. Therefore, for the purpose of affording this authentic evidence of his rights, where they have devolved upon him by matter in pais, as by dying seized without hejrs, by alienation to an alien, or the like, inquests of office were devised by the law. These offices are either offices of entitling, or offices of instruction, the former of which have reference to the matter of escheat for want of heirs. Their effect is to vest the possession in the crown by the office only, without seizure on the part of the king, provided the possession be vacant. But if any other except him in whose right the king claims, be in possession-at the time of the office found, the king shall not be in actual possession till seizure. 3 Blacks. Comm. 259-260. 5 Bac. Abr. Prerogative. E. 7. pp. 565. 575. 7 Com. Dig. Prerogative. D. 68. 72. 74. pp. 78. 81. Mr. justice Story, in Fairfax v. Hunter, 7 Cranch 621. quoting the above authorities, and some cases from the Year books, which he had *595 doubtless an opportunity of examining, says—“ Even after office found, the king is not adjudged in possession, unless the possession were then vacant; for if the . . , it-possession were then m another, the king must enter or seize by his officer, before the possession in deed shall be adjudged to him.” From these authorities, it is clear, on the one hand, that the office found vested the possession in the crown, where the possession was vacant at the time; but that if the possession was not vacant, it did not become so vested, and of course the information for intrusion could not be maintained, until there had been an entry or seizure by the officers of the crown. If this be so, it is equally clear, that it must be a good defence to the information, that the possession was not in the king by the inquest of office, by reason of the adverse possession of another at the time it was found.
But though the office found vested the possession when it was perfected by being duly returned, yet until it was so perfected, I conceive it had no such effect. For, as we have already seen, the crown could only take by matter of record, and inquests of office were devised for the purpose of affording authentic record evidence of the title of the crown. But the inquisition itself is no record. It is an indenture between the escheator and the jury, found either ex oficio or by the command of a writ directed to the officer, 3 Blacks. Comm. 258. and which he is to return either into the chancery or the exchequer, 5 Bac. Abr. 575. in note, or into the king’s bench when the record of conviction and seizure was there. Before such return, no grant or letters patent could be issued by the crown, but all such grants before return were void. 3 Blacks. Comm. 259. But when returned, then and not till then, the inquisitions became records; then and not till then, the title of the crown was complete, and it became invested with the possession, provided the possession was not *596 adverse!}’- in another. And there was great reason for requiring such a return of the inquisition. Its operation. being to seize the lands into the hands of the crown, , ° . . by a proceeding entirely ex parte, it was proper so to provide, that any person interested might contest it. It was therefore required that the inquisition should be returned to a court of record, where it might be contested by traverse, or monstrans de droit, or petition of right, according to the nature of the case. By the traverse, the traverser denied the facts found by the inquisition ,* by the monstrans, he relied on those facts 'themselves, as shewing his title; and by the petition of right, he disclosed new facts not found by the office. 3 Blacks. Comm. 260. But how could this be done, if the inquisition were kept in the pocket of the escheator, instead of being returned to a court, there to have the force of a record, affording notice to all the world of the title of" the crown, and an opportunity to all persons interested, of asserting their claims to the property, so seized into its hands ? Little foundation, indeed, would there be for the commentator’s boast, that “it is.a part of the liberties of England, and greatly for the safety of the subject, that the king may not enter upon or seize any man’s possessions upon bare surmises, without the intervention of a jury,” if such an ex parte finding were to vest the title in the crown, without affording those interested an opportunity of contesting it, by having it returned into some court of justice. When so returned, and thereby perfected, the title of the crown doubtless related back to the finding, as in the case of a grant; Knight's case, 5 Co. 56b- but until returned, I cannot but think the title was. defective, and the possession did not vest* It is scarcely necessary to say, that the provi *597 sions of our law, like the law of England, require the re- ........ . - , t> turn o-t the inquisition mto the courts oi record. By our statute,' one part is to be returned into (he office of the county court, there to be recorded, and the other part is to be returned into the circuit court, within a month after the inquest taken. 1 Rev. Code, ch. 82. § 2. 8. pp. 295, 6.
In this case, the information distinctly sets out, that the inquisition was returned to and filed in the clerk’s offices of the county and circuit courts of Cabell; but that fact is not found by the jury, in the special verdict, though they have found and set forth the inquisition itself in hcec verba. It is clear, therefore, on this ground, that judgment cannot be given for the commonwealth upon this special verdict.
Then, as to the matter of defence. The defendant pleaded not guilty, but it was agreed that he might give any other matter in evidence, which he might have pleaded specially. Now, he might have specially pleaded his own possession at the date of the inquisition found; for if he was then in possession, he was not liable to be proceeded against as an intruder. 7 Com. Dig. Prerogative. D. 68. p. 78. Accordingly, he adduced evidence designed, I presume, to shew his possession in avoidance of the possession of the commonwealth. But in this he failed; for though he shewed a possession, it was a possession without pretence of title. In another respect also, the verdict is too uncertain to enable us to give judgment. Judgment cannot be given for the commonwealth on the findings of the special *598 verdict, because if the grantees in the Savage grant were joint tenants, and the grantee Matthew Jones died before the 1st January 1787, when the statute abolishing the jus accrescendi among joint tenants (1 Rev. Code, ch. 98.) took effect, Jones’s right survived to his co-joint-tenants; and in that case there was an adverse possession in them, and perhaps in Hite, as tenant in common with them, which prevented the possession from vesting by the operation of the inquisition found itself, without an entry or seizure by the officers of the commonwealth. But the Savage grant not being found, this matter is left in uncertainty. Here, then, are two essential defects in the special verdict, rendering it impossible for this court to know for which party to give judgment. If the inquisition was duly returned, if there was a tenancy in common instead of a jointenancy in the grantees in the Savage grant, or if there was a jointenancy, and Jones survived to a period subsequent to the statute which abolished the jus accrescendi, I should incline to think the commonwealth entitled to judgment; for 1 do not think Hite ever had such possession of Jones’s lot, as to entitle him to hold it against the commonwealth, or Jones’s heirs, if such should hereafter appear. If I rightly understand his title, he claims 200 acres, and only 200 acres, under German, who was entitled to lot 47, according to the division of 1775, which covered what is, or a part of what is, now lots 45 and 61. Although, therefore, in point of fact, he was in possession of lot 47, yet he claimed the land under German, not under Jones ; and when by the new arrangement or division, lot 47 was removed to another part of the Savage grant, and what had been lot 47 was. turned into lots 45 and 61, Hite’s rights under German were instantly transferred according to the new allotment, and what had been lot 47 became the lot of Jones or those claiming his rights, subject, it is true, to any just claim for improvements. Hite, therefore, had neither title, nor *599 possession with claim of title, to lot 45, after the new arrangement, and at the date of the inquest of escheat. He had at most, only an incumbrance, which he after-wards enforced by an ex parte, and therefore irregular, proceeding ; and even this was not perfected until the sale of the marshal to him in November 1823, at the earliest; which was three years after the inquest found.
Upon the whole, I am of opinion, that the judgment must be reversed, the verdict set aside, and the cause sent back to the circuit superiour court for a venire de novo.
Cabell and Brockenbrottoh, J. concurred.
Judgment entered, ly this court
That the special verdict found in this cause, is defective and imperfect in the following respects, 1. in not finding, that the inquisition of escheat ever was duly returned according to law; 2. in not finding the grant to Savage and others, so as to enable the court to determine, whether the grantees held as joint tenants or as tenants in common; 3. in not finding, whether Jones died before or after the 1st January 1787, so as to enable the court to determine, whether his title (if he originally held as joint tenant with the other grantees) survived to them, or escheated to the commonwealth; and 4. in not finding the title of Hite with sufficient precision: and that the verdict is too imperfect to enable the court to give judgment thereon, according to the truth and right of the case: and that the judgment of the circuit superiour court is erroneous. Therefore, judgment reversed, verdict set aside, cause remanded, and venire de novo directed.

Note by the president. In Alton Woods's case, 1 Co. 42b- three justices held, that an office of instruction was sufficient to entitle the king, though it was never returned, on the authority of the book of assizes, where it appeared, that “upon examination of the *597 escheator, if it appeared that he had seized the lands into the king’s hands, although the office by virtue whereof he. seized it, was never returned, it is sufficient enough.” I am not certain, whether we may not infer from this authority, that but for the actual seizure, the office would not have sufficed without a return 1 or whether we are to consider it as an authority against the proposition, I have endeavoured to sustain. I am inclined to adopt the first inference.